**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANGEL LOPEZ and KAZUE KOIZUMI,<br>Plaintiffs,<br>v.<br>THE CLERK OF THE NEW JERSEY APPELLATE DIVISION, in his/her official capacity, *et al*.,<br>Defendants. | No. 26-cv-2950<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by defendants the Clerk of the New Jersey Appellate Division, in his/her official capacity ("Clerk"); the Presiding Judge for Administration of the Appellate Division,[1] in his/her official capacity ("Presiding Judge"); and the Administrative Director of the New Jersey Courts, in his/her official capacity ("Administrative Director"). ECF No. 13. Plaintiffs Angel Lopez and Kazue Koizumi ("Plaintiffs") opposed the motion,[2] ECF No. 18, and the Clerk, the Presiding Judge, and the Administrative Director replied, ECF No. 19. The Court decides the motion without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, the Court will grant the motion and dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction.[3]

[1] According to the moving defendants, "[t]he correct title for the referenced position is 'Chief Judge of the Appellate Division.'" ECF No. 13 at 10 n.3.
[2] Plaintiffs' opposition was untimely under the parties' Court-approved briefing schedule. ECF No. 12. Nonetheless, the Court has considered Plaintiffs' opposition.
[3] Also before the Court are Plaintiffs' (1) motion for reconsideration of the Court's earlier Memorandum Order denying their motion for preliminary injunctive relief and (2) letter requesting an injunction pending reconsideration. ECF Nos. 7, 23. Because the Court will dismiss the complaint, the Court will deny Plaintiffs' reconsideration motion and request for a stay pending

## I. BACKGROUND

On March 23, 2026, Plaintiffs sued the Clerk, the Presiding Judge, the Administrative Director, and ten John Doe "court officials" (collectively, "Defendants").[4] ECF No. 1 ("Compl."). In the complaint, Plaintiffs allege that they are currently pursuing an appeal in the Appellate Division of the New Jersey Superior Court. *Id.* ¶¶ 6, 17. According to Plaintiffs, they are at risk of having their appellate rights extinguished by a combination of the Appellate Division's (1) denial of their motions to waive the fees required to obtain a transcript of lower court proceedings—which, according to Plaintiffs, is a prerequisite to perfecting an appeal in the Appellate Division—and (2) denial of plaintiff Lopez's motion to sever the state-court appeal so that plaintiff Lopez (who now has the requisite lower court transcripts) may pursue his appeal independently. *Id.* ¶¶ 17–36. Plaintiffs allege that the Appellate Division will soon dismiss their appeal if all appellants do not obtain the requisite transcripts. *Id.* ¶¶ 26, 46, 49, 51, 55, 61.

Plaintiffs allege that New Jersey's indigency rules require the Appellate Division to waive transcript fees for them. *Id.* ¶ 32. In particular, Plaintiffs point to New Jersey Court Rules 1:13-2(a) and 2:7-1, which require waiver of "any fees . . . payable to any court or public officer" and "filing fees and the deposit for costs," respectively. *Id.* ¶¶ 28–29, 41; *see also id.* ¶ 65 (alleging that the "New Jersey Supreme Court is the exclusive rulemaking authority for the New Jersey Judiciary" and promulgates the New Jersey Court Rules). Plaintiffs allege that these rules have "historically" covered transcript fees and that the Appellate Division's "contrary interpretation" in

---

reconsideration as moot. *See Goodelman v. Ticketmaster*, No. 24-10980, 2025 WL 2418909, at *3 (D.N.J. Aug. 21, 2025); *Young v. StoneX Grp. Inc.*, No. 24-526, 2025 WL 2234915, at *9 (D.N.J. Aug. 6, 2025).

[4] That same day, Plaintiffs filed a motion for a temporary restraining order and a preliminary injunction. ECF No. 3. On March 24, 2026, the Court denied Plaintiffs' motion for a temporary restraining order and a preliminary injunction because Plaintiffs had not shown "'a reasonable chance . . . of winning' on the merits." *See Lopez v. Clerk of the N.J. App. Div.*, No. 26-2950, 2026 WL 811379, at *2 (D.N.J. Mar. 24, 2026) (citation omitted).

their case is "textually indefensible, structurally incoherent, ultra vires, and unconstitutional." *Id.* ¶¶ 5, 29, 41.

Based on these allegations, Plaintiffs assert claims (1) under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment's due process clause, (2) under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment's equal protection clause, and (3) to invalidate ultra vires actions under New Jersey law. *Id.* ¶¶ 37–79. Concerning relief, Plaintiffs ask the Court to (1) "[e]njoin Defendants from dismissing the[ir] consolidated appeal"; (2) order Defendants to (a) "waive transcript fees for . . . Koizumi," (b) "provide transcripts to Koizumi at public expense," and (c) "permit Lopez's appeal to proceed independently if necessary"; and (3) declare "that transcript fees are 'fees' under [New Jersey Court] Rules 1:13-2 and 2:7-1" and "that the Appellate Division's refusal to waive transcript fees violates the Fourteenth Amendment." *Id.* at 16 (Prayer for Relief).

## II. LEGAL STANDARD[5]

A Rule 12(b)(1) motion challenges a court's subject-matter jurisdiction to hear a case. *G. W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 468 (3d Cir. 2022). "A challenge to subject[-]matter jurisdiction . . . may be either a facial or a factual attack." *Id.* (citation omitted). Facial attacks (like Defendants' challenge here) contest the sufficiency of the pleadings.[6] *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). "In reviewing a facial attack, [a] court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citation omitted); *see In re Schering*

[5] Because the Court will dismiss for lack of subject-matter jurisdiction, the Court only recites the Rule 12(b)(1) standard.

[6] Factual attacks, on the other hand, challenge jurisdiction on the "actual facts" of the case. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). Accordingly, in deciding factual attacks, courts consider "evidence outside the pleadings." *Id.*

*Plough Corp. Intron/Tendor Consumer Cases*, 678 F.3d 235, 243–44 (3d Cir. 2012). And the burden of establishing jurisdiction "rests with the party asserting its existence." *AEI Life*, 800 F.3d at 105.

## III. DISCUSSION

The Court will dismiss Plaintiffs' complaint under Rule 12(b)(1) because their lawsuit is barred by the Eleventh Amendment and does not present the Court with an Article III case or controversy.

### A. Eleventh Amendment Immunity

Plaintiffs' complaint must be dismissed because their lawsuit runs directly into the Eleventh Amendment's grant of sovereign immunity to the States.[7] "Generally, States are immune from suit [in federal court] under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). This immunity is critical to "preserv[ing] the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States,'" and to "safeguarding the dignity of the [S]tates." *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (citation omitted). Defendants—a state-court clerk, a state-court judge, and various state-court employees, all sued here in their official capacities—qualify for the Eleventh Amendment's grant of sovereign immunity. *Jackson*, 595 U.S. at 39; *see Robinson v. N.J. Mercer Cnty. Vicinage-Fam. Div.*, 514 F. App'x 146, 149 (3d Cir. 2013) ("[B]oth the court itself and its employees in their official capacities were unconsenting state entities entitled to immunity under the Eleventh Amendment."); *Dongon v. Banar*, 363 F. App'x

[7] Although Defendants invoke the Eleventh Amendment as to all Defendants, their briefing on Plaintiffs' claims against the Presiding Judge also addresses judicial immunity. *See* ECF No. 13 at 10–14; ECF No. 19 at 2–3. Because the Court dismisses the complaint on Eleventh Amendment and Article III grounds, it need not address Defendants' separate argument concerning judicial immunity.

153, 156 (3d Cir. 2010) (similar); *see also Kennedy v. N.J. Ct. Sys.*, No. 24-2826, 2026 WL 323878, at *2 (3d Cir. Feb. 6, 2026).

In an attempt to get around this jurisdictional bar, Plaintiffs cite *Ex parte Young*, 209 U.S. 123 (1908), *see, e.g.*, ECF No. 18 at 3, 9–10, 12, which provides a "narrow exception" to the Eleventh Amendment's grant of sovereign immunity to the States, *Jackson*, 595 U.S. at 39. But Plaintiffs cannot invoke *Ex parte Young* because they seek injunctive and declaratory relief "directed toward state judicial officers [and employees] regarding their adjudication of the cases and controversies put before them." *Williams v. Parikh*, 708 F. Supp. 3d 1345, 1355 (S.D. Ohio 2023), *aff'd*, No. 24-3059, 2024 WL 5355086 (6th Cir. Sept. 4, 2024).

*Ex parte Young* applies when a "private part[y] . . . seek[s] [a] judicial order[] in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Jackson*, 595 U.S. at 39. However, *Ex parte Young* generally does not apply where a private party asks a federal court "to issue injunctions against state-court judges" or state-court employees (*e.g.*, "clerks"), because "those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." *Id.*

For instance, in *Jackson*—which centered on S.B. 8, a Texas state law allowing private parties to sue anyone who, absent a medical emergency, performed (or aided or abetted the performance of) an abortion—plaintiffs sued several state-court judges and clerks (in their official capacities) and sought to enjoin "all state-court clerks from docketing [S.B. 8 cases] and all state-court judges from hearing them." *Id.* The Supreme Court held that *Ex parte Young* could not lift the Eleventh Amendment's grant of sovereign immunity to the Texas judges and clerks, because *Ex parte Young* does not typically allow for injunctions against "state-court judges or clerks." *Id.* In doing so, the Court—quoting from *Ex parte Young* itself—noted that "'an injunction against a

state court' or its 'machinery' 'would be a violation of the whole scheme of our Government.'" *Id.* (quoting *Ex parte Young*, 209 U.S. at 163).

Like the lawsuit in *Jackson*, Plaintiffs' lawsuit does not fit into *Ex parte Young*'s narrow exception to the Eleventh Amendment. Plaintiffs' allegations focus on a "combination of [several] rulings" in their state-court appeal. Compl. ¶ 4; *see also id.* ¶¶ 3, 14–16, 17–27. Additionally, Plaintiffs seek two broad categories of relief. First, they seek injunctive relief to prevent the Appellate Division (via the Presiding Judge and court employees) from applying New Jersey Court Rules 1:13-2 and 2:7-1 in a way that would have the effect of dismissing Plaintiffs' state-court appeal. *See* Compl. at 16. Second, Plaintiffs seek declaratory relief as to the proper interpretation of New Jersey Court Rules 1:13-2 and 2:7-1. *Id.* Thus, Plaintiffs seek relief aimed directly at guiding the Appellate Division's "work [in] resolv[ing] disputes" before it—relief forbidden under *Ex parte Young*. *Jackson*, 595 U.S. at 39; *see Ex parte Young*, 209 U.S. at 163; *Grossberger v. Clerk of the Sup. Ct.*, No. 25-1925, 2025 WL 3207808, at *1 (3d Cir. Nov. 4, 2025); *Cooper v. Zema*, No. 26-5558, 2026 WL 3001327, at *5 (E.D. Pa. Oct. 5, 2026); *Breen v. Bowen*, No. 26-4872, 2026 WL 2088100, at *1–2 (N.D. Cal. July 20, 2026) ("Breen seeks precisely what the Eleventh Amendment forbids: prospective declaratory and injunctive relief against a state judge that would meddle in the execution of his duties as a part of the state court system." (citing *Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024))); *Oyelakin v. Clerk of Phila. Fam. Ct.*, No. 25-3748, 2025 WL 3633211, at *8–10 (E.D. Pa. Dec. 12, 2025), *aff'd as modified*, No. 26-1009, 2026 WL 2731690 (3d Cir. Sept. 16, 2026).

Plaintiffs make two follow-up points, neither of which prevents dismissal of their case. First, Plaintiffs emphasize that they seek to preserve access to appellate review, asking this Court "to prevent the State's appellate machinery from slamming the courthouse doors shut before any

appellate review can occur." ECF No. 18 at 10. But that description confirms that the relief they seek here would guide the Appellate Division's "work [in] resolv[ing] disputes"—again, relief forbidden under *Ex parte Young*. *Jackson*, 595 U.S. at 39. Indeed, Plaintiffs' lawsuit closely resembles several recent (post-*Jackson*) lawsuits that federal courts have dismissed on Eleventh Amendment grounds, even though plaintiffs sought to force state courts to hear certain cases. *See, e.g.*, *Jackson v. Mason*, No. 23-2464, 2024 WL 3695293, at *1–2, *7–8 (D. Kan. Aug. 7, 2024) (holding that *Ex parte Young* did not save a lawsuit against a state-court judge and a state-court clerk alleging that "defendants violated her constitutional rights by" imposing "filing restrictions on plaintiff" and thus "denying [plaintiff] access to the courts"), *aff'd*, No. 24-3131, 2025 WL 2528310 (10th Cir. Sept. 3, 2025); *Williams*, 708 F. Supp. 3d at 1355–56, 1355 n.8 (holding that *Ex parte Young* could not reach claims for injunctive relief requiring state-court officials to accept "certain filings" and "file [plaintiff's] civil cause of action," because "federal courts are barred from entering injunctions against judicial officials in their official capacities that would dictate how state courts dispose of cases slated for resolution"); *Albert v. Minn. Ct. of Appeals/Justs.*, No. 22-2568, 2022 WL 18141658, at *4 (D. Minn. Nov. 30, 2022) ("The relief that Albert requests would interfere with the state court's ability—and, by extension, its clerk's—to proceed in its 'own way to exercise jurisdiction.'" (citation omitted)), *aff'd*, No. 22-3665, 2023 WL 4234187 (8th Cir. Mar. 31, 2023).

Second, Plaintiffs argue that they challenge only "administrative enforcement." ECF No. 18 at 2–3; *id.* at 8–9 ("These are classic administrative and procedural enforcement functions."). However, "Plaintiffs' attempts to characterize [Defendants'] acts as nonjudicial in character are unavailing." *Ortiz v. Foxx*, 596 F. Supp. 3d 1100, 1109 (N.D. Ill. 2022). Although *Ex parte Young* can—in some circumstances—reach lawsuits for prospective relief against state-court judges,

officials, or employees where a plaintiff challenges those officials' "administrative and executive acts necessary to run the business of court," *C.R. Corps v. LaSalle*, 741 F. Supp. 3d 112, 145 (S.D.N.Y. 2024), Plaintiffs ask the Court to guide a state court's adjudicatory actions (via its judges and staff) in their own case currently pending in that state court, *see, e.g.*, Compl. ¶¶ 5, 39–41, 54–58, 60, 68, 71, 73; *cf. also Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 910, 912 (8th Cir. 2022). So contrary to Plaintiffs' arguments, their complaint centers on "adjudication," not "administrative enforcement." ECF No. 18 at 11; *see also Reule v. Jackson*, 114 F.4th 360, 366 (5th Cir. 2024) ("[T]here is nothing ministerial or administrative about that duty: it is precisely the type of adjudicatory function judges perform every day."), *cert. denied*, 145 S. Ct. 1431 (2025). As such, Plaintiffs' lawsuit is barred by the Eleventh Amendment, and the Court will dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction.

### B. Article III

Alternatively, the Court must dismiss Plaintiffs' complaint because it does not present the Court with an Article III case or controversy.[8] Article III of the U.S. Constitution limits federal judicial power to the resolution of "actual [cases or] controversies arising between adverse litigants." *Jackson*, 595 U.S. at 39 (citation omitted). This limitation not only "sharpen[s] the issues for judicial resolution," *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003) (citation omitted), but also ensures that the federal courts "respect[] the proper—and properly limited—role of the courts in a democratic society," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation omitted).

[8] Defendants do not raise Article III arguments in their moving papers. However, a court may *sua sponte* raise issues regarding its subject-matter jurisdiction. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

As the Supreme Court stated in *Jackson*, "'no case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'" 595 U.S. at 40 (citation omitted); *see also Lindke v. Tomlinson*, 31 F.4th 487, 491–95 (6th Cir. 2022). By the same reasoning here, no case or controversy exists between Plaintiffs and Defendants. Plaintiffs' lawsuit stems from several motions that the Appellate Division denied in their appeal, namely motions "for transcripts at public expense" and a motion to sever their appeal. Compl. ¶¶ 22–27. Plaintiffs in essence seek to attack the propriety of those decisions because they will allegedly "extinguish Plaintiffs' appellate rights without lawful basis." *Id.* ¶ 78.

But Defendants are the state-court judge (and state-court employees) who adjudicated (or assisted in the adjudication of or entry of orders on) Plaintiffs' motions. *Id.* ¶¶ 13–16, 22–47. Plaintiffs do not allege that the Appellate Division or Defendants "played [any] role in [these rules'] passage." *Disability L. Ctr. v. Cox*, No. 25-307, 2025 WL 2050235, at *7 (D. Utah July 22, 2025); *see* Compl. ¶¶ 65, 69, 78. Instead, the Appellate Division applies these rules to cases before it (including Plaintiffs' appeal) via traditional adjudicatory techniques like statutory interpretation. Compl. ¶¶ 5, 22–27, 41, 58, 60; *see Moore v. Yehling*, No. 25-299, 2025 WL 2829557, at *2 (D. Ariz. Oct. 6, 2025) ("Plaintiff's disagreement with the [state-court judge's] interpretation of Arizona law does not create the adversarial posture required for Article III jurisdiction."). As such, Defendants lack the "personal or institutional stake" in this case required to generate an Article III case or controversy, and the Court must dismiss for lack of subject-matter jurisdiction. *Kellogg v. Nichols*, 170 F.4th 20, 31 (2d Cir. 2026); *see also Frazier v. Prince George's Cnty., Md.*, 140 F.4th 556, 562–63 (4th Cir. 2025).

## IV. <u>CONCLUSION</u>

Accordingly, **IT IS** on this 22nd day of October 2026,

**ORDERED** that Defendants' motion to dismiss (ECF No. 13) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' complaint (ECF No. 1) is **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiffs' reconsideration motion (ECF No. 7) and letter requesting an injunction pending reconsideration (ECF No. 23) are **DENIED** as moot; and it is further

**ORDERED** that Plaintiffs may file an amended complaint within thirty (30) days of the date that this Opinion and Order is entered. The amended complaint "shall indicate in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added." L. Civ. R. 15.1(b)(2); and it is finally

**ORDERED** that the Office of the Clerk of the Court shall mark this matter **CLOSED**.

**SO ORDERED**.

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**